I'm bringing in Ms. Carter right now. Thank you. Good morning, Ms. Carter. Can you hear me? Yes, I can. Great. Thank you. All right. So we've got Mr. Brophy at the podium and Ms. Carter by Zoom. You may proceed. Thank you, Your Honor. And good morning. May it please the Court. My name is Joseph Alexander Brophy. I represent Petitioner K.S. in this matter. And we would respectfully reserve three minutes for rebuttal, if we may. Go ahead. Your Honor, this case does not call... This case does not call upon Your Honors to affirm or reverse the agency's adverse credibility determination. What this case is about is the Board of Immigration Appeals simply failing to do its job and considering compelling pieces of evidence that established K.S.'s sexual orientation. We had a 2007... Didn't the I.J. actually consider it? Didn't the I.J. say, you know, I find that I don't believe him and I don't believe he's part of a social group and in determining that I'm taking into account the testimony of the wife and this other affidavit of probable cause. He's basically saying I don't believe any of it, i.e., he's not a member of a social group. Isn't that different from a case where you have somebody's testimony about past persecution and then you have independent evidence that would say, well, wait a minute, there's going to be future persecution and you can't discount that. You can't say, oh, well, we didn't believe him and so we don't have to look at the other evidence. Isn't the evidence here all related to the same thing? That is, is he part of this social group? And isn't that absolutely necessary to find and the I.J. didn't find it. So why does the BIA have to rehash everything when that's part and parcel of the adverse credibility determination? Your Honor, I would respectfully disagree that it was part and parcel of the adverse credibility finding. And the reason for that is that, number one, I know the government has pointed to the language by the BIA that it adopted and affirmed the adverse credibility finding by the I.J. We'll start with the I.J. You'd have to acknowledge, wouldn't you, that the I.J. said exactly what Judge Rendell said, which is, I don't believe he's a member of this group and I am taking into account the wife's testimony in the police report. That is correct. That was something that the I.J. specifically said, right? That is correct, Your Honor. Okay. So on that score, you'd have to acknowledge at least that at the I.J. level, there's a factual finding. And if that's true, just keep it at the I.J. level for a moment, would we have jurisdiction to even look at that? Your Honor, I believe that looking at the particular social group and whether that would be a factual finding or a mixed question of law or fact is, you know, as you mentioned, something that is not necessarily before the court today. And keeping it at the I.J. level, I certainly do understand and I acknowledge that the I.J. on page 11, I believe the I.J.'s decision did specifically reference the social group and concluded that K.S. was not a member in that particular social group. And it was based on all the evidence, not just finding him incredible on the stand, but looking at these other pieces and saying, I've looked at all that and he's not in that group. That's a factual determination, isn't it? Here's a group. You're either in it or you're out of it. You're in or you're out. And whoever the I.J. was in this moment, I think it was a she, she looks at it and says, no, you're not in. So I'm asking a jurisdictional question based on the jurisdictional limitations. Would we even be permitted to look at that? Our position is, Your Honor, that we would, that the court would be able to look at that. And what basis? The reason would be going back to the statutory basis for the I.J.'s job here, the I.J.'s burdens under the Real ID Act. And the I.J. is supposed to weigh the evidence and make a determination as to whether the applicant has met his or her burden of proof. Here, the weighing would be the issue of law. Did the I.J. actually weigh evidence here? On the one hand. He didn't do his job. It's not how he weighed. It's did he do his job. That's exactly correct, Your Honor. And did he weigh? Yes. And did she weigh in this instance, Your Honor. On how he weighed. Yes. Did she actually weigh the evidence? On the one hand, you had K.S.'s testimony, which we understand the I.J. found to be not credible. However, not credible does not mean that everything he said is a lie. This isn't the analogy where you have one guard that tells the truth and one guard that always lies. On the one hand, you don't have credible evidence weighing that says, yes, you know, this person is bisexual or is not bisexual. But on the other side, you have an affidavit by a completely disinterested police officer who observes K.S. wearing a bra in a car. But that's not a match on homosexuality, is it? I mean, it would be different if that evidence had to do with his having relations with other men. But the fact that he might have shoes in his car or was cross-dressing, is that necessarily he's a member of that social group? Of course not, Your Honor. It wouldn't be necessarily that everybody bisexual dresses in women's clothing or that everyone who dresses in women's clothing is bisexual. However, you know, just in regular standards of the community, I believe that is a that that is a tendency that a lay person or most lay people would acknowledge that, you know, they would associate with a somebody who is gay or bisexual. You've got to help me because I'm still not following you. And I really do want to understand. What's your understanding of the jurisdictional bar? Because what it sounds like you're saying is. We we are empowered to review the factual decisions of the IJ. As as may be incorporated by the BIA. When you answer that, please address the criminal alien bar. That's that's that's the question. How is it that we are empowered to do that? Because I understand the question to not be. You know, did the did the IJ look at this or not look at this? That's your argument at the BIA. The IJ looked at it. So if the IJ looked at it in light of the jurisdictional bar we've got, how can we look at it and say you got that wrong? I believe that our position, Your Honor, is that the IJ did not actually weigh the evidence, did not actually follow the law. She said she did. So are you saying we should just not believe her? She made a passing reference to the evidence, Your Honor. However, in in weighing evidence there, I believe that the evidence would be compelling. That the only evidence that's actually in the record is that chaos is, in fact, bisexual and does, in fact, dress in women's clothing. I thought your argument was that the BIA didn't do its job. That's exactly right, Your Honor. And I know we're discussing, I believe, Judge Jordan's question. If the BIA had properly reviewed the IJ's determination on social group, would we be with this court have jurisdiction to then review that as a finding of fact or as a mixed finding of law? In fact, I agree. I don't believe that question is before this court because the BIA did not actually review that piece of the IJ's decision. So your your view is that if the BIA did not perform the functions that it needs to perform in reviewing the IJ's determination, we have jurisdiction. That's exactly correct, Your Honor, because the BIA here made a legal error in not actually reviewing the foundational elements of the IJ's decision. Talk to me about harmless error then, because if your argument is the BIA didn't do what it was supposed to do, but we assume for this, but the BIA is not a fact finding body, right? That's correct, Your Honor. Okay. They review the fact finding done by IJ's. So if we said the BIA didn't do what it was supposed to do and it should have looked at what the IJ did and the IJ is the fact finder and did, in fact, find fact, would we be dealing with harmless error? Because even if we said, yeah, the BIA blew it, you didn't do an adequate job of looking at the whole record because you weren't paying attention to what the IJ said. But then we say the IJ said not a member of this group and we can't review that. How is that then reversible error? I believe it would be reversible error, Your Honor. And again, just going back to the point I made earlier that we do not concede that the IJ actually weighed any evidence here in coming up with that, not with the adverse credibility finding, but with the finding that KS was or was not a member in a particular social group. As Judge Rendell said earlier, this is a reviewing court. It's not this court's position to say, well, the BIA didn't do its job here. Stick with my question, Mr. Rofia. Assume for the sake of argument that we disagree with you and we thought the IJ saying, hey, I've looked at everything and this is what I think was, in fact, a weighing of the evidence. Assume that we thought that. Now answer the question, even if we thought the BIA blew it and didn't properly consider all that the IJ had done, where would the harm be? What would we be telling the BIA to do that it could do that would actually affect that IJ decision, the fact decision? I believe what we're missing here, Your Honor, is that the BIA, the BIA itself, which does have jurisdiction to review a fact finding, never actually reviewed that fact finding that KS is not bisexual. That is exactly what was not done here. So for this court to say, well, if we were to go on remand and lose and the BIA were to affirm this finding that KS is not bisexual and then we filed another petition review for you to come to the Third Circuit and then Your Honors would have this issue in front of them as to whether this was a fact finding and whether there's jurisdiction and whether the fact finding was correct. I just believe that stacks too many hypotheticals on top of one another. Well, let me summarize. What your argument is, is the BIA, had the BIA done its job, it might have looked at what the IJ did and said, we don't believe you did an adequate job of accounting for this evidence. That's exactly right, Your Honor. And it had the power to do that. That's exactly right. So in that sense, it is harmful error. Absolutely, Your Honor. That's exactly our point, is that, you know, if this case ever does come back up here again, I'm sure Your Honors agree with us. I certainly would argue that there is a mixed question of law and fact here as to jurisdiction. I hope we never have to come here again with this case, Your Honor. I hope the BIA actually would look and say, hey, wait a second here. There's actually no evidence that he's not bisexual and there's lots of evidence that he is and maybe the IJ got that wrong. Our point is that the BIA hasn't done that yet. Well, on that point, your entire argument, it seems, hinges on the statement that the BIA said, without an adverse credibility, in light of the adverse credibility finding here, you can't win. Am I missing something? It seems like your argument all centers on that comment by the BIA. It says it reviewed the IJ's record, but it did it in a way that revealed it had only looked at the adverse credibility finding. Am I misunderstanding your argument? That is our argument, Your Honor. May I respond? I see my time is up. May I answer that question in more depth? I believe it would be not only that just one sentence in the opinion. I mean, first, starting with that entire paragraph, everything that the BIA cites in that paragraph, on page four of the administrative record, talks about the case being fatally flawed. The respondent cannot meet his burden of proving he merits asylum and withholding. We do not reach the respondent's remaining contentions on appeal concerning the application for asylum. Now, one of those contentions was KS is bisexual, and the IJ got that wrong. We met our burden, both through KS's testimony and through independent evidence. And the last thing I would point, Your Honor, to is that, and I know the government will probably speak to the court about the adopting and affirming the IJ's adverse credibility finding. The pages cited there, IJ at three to eight, the IJ, the language that the IJ got in depth with the affidavit, if you can even say she did, which I don't believe, but where she even discussed both the wife's testimony and the affidavit was on page 11. So saying that that was adopted and affirmed, I don't believe could be the case. Thank you, Your Honors. All right. Thanks. Ms. Carter. Good morning, and may it please the Court, Margo Carter of the United States Attorney General. In this adverse credibility case, the petitioner's controlled substance offense precludes this court from exercising jurisdiction  Moreover, the agency... Well, isn't more than credibility at issue, Ms. Carter? I mean, the argument being put to us is that there's an error of law, and that the error of law is, among other things, that there's evidence besides the witness's credibility that should have been taken into account and wasn't properly taken into account. The BIA didn't even look at it. And then beyond that, that there's a purely objective question when it comes to withholding of removal, which doesn't even account for a subjective component, and therefore everything should have been looked at. Ergo, the BIA didn't do its job. It ought to go back. So can you address that argument? I guess I'm taking issue with your very first sentence, which is this is a credibility case. And I hear the other side saying it's not just a credibility case. Take that on. Sure, Your Honor. I think getting directly to that issue that I think most interests the Court here as to whether or not the adverse credibility determination by itself was sufficient, it was. The adverse credibility finding here did not ignore the evidence. Contrary to the petitioner's suggestion, the adoption and affirmance by the Board of the immigration judge's decision subsumed Pages 3 to 8 of the immigration judge's decision. And that included a mention of the petitioner's wife's testimony regarding his bifectuality as well as the police report. We know that the IJ did it. Our question is did the BIA pay attention to what the IJ did? And when the BIA specifically says you can't win because of the adverse credibility determination, that's not some reference to credibility of a police report or credibility of the wife. That's a direct reference to the credibility of the petitioner, isn't it? Okay. It is, but the Board of Immigration Appeals here adopted and affirmed the decision of the immigration judge. We saw that. I'm trying to get you to focus on one thing. The BIA by its own language seems to be saying you can't win because of the adverse credibility determination. You've reemphasized that here. Right. Isn't it, in fact, the case that he could win on the basis of a purely objective standard if the other information were taken into account, not just his testimony? I think that the statute makes clear that credibility is required for both asylum and withholding over Google. And the section of the statute says burden of proof and then sustaining burden. And in the section that discusses sustaining the burden, it says the testimony of the applicant may be sufficient to sustain the applicant's burden, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that. But that doesn't address the existence of other evidence. And it's clear, is it not, that if there is other evidence, then notwithstanding the adverse credibility finding, the BIA must address the impact of that other evidence. I think the other evidence was addressed within the adverse credibility finding. There is no separate requirement to address this additional objective evidence apart from the adverse credibility finding. Well, the BIA's citation to the adverse credibility determination is pages 3 to 8. And that is the section that discusses the vague and inconsistent statements by the petitioner. Later in the IJ's determination, he talks about whether he's a member of the particular social group and says, well, I'm taking into account the wife's testimony and the affidavit of probable cause, which seems to be a little weird because he doesn't discuss that he didn't believe the wife and he didn't credit the affidavit. You'd think he'd have to say, well, you know, I think she's just in cahoots with him and she wasn't very credible either. But the IJ appears to be determining, and every other citation in here is to pages 3 to 8, which focuses strictly on the petitioner's own credibility in his testimony. So is it not the case that we at least have a doubt? And he talks about asylum, asylum, asylum, asylum, without credible testimony. Without credible testimony, Sheponick cannot meet his burden of proving that he merits asylum and withholding a removal. It seems to me the IJ were looking at the other evidence. He might say, well, you know what? This guy, I don't care if he was inconsistent, but the wife seems to be pretty truthful. And, you know, I believe her that he told her this. And if he goes back, he's going to be beaten. But no consideration was given to that by the IJ, and the BIA didn't seem to care. I mean, I think that the immigration judge does discuss the police report on page 5 of the immigration judge's decision, discussing that, you know, petitioner has these 2017 criminal records that he was arrested while dressed in women's clothing and that the immigration judge used that in part as a basis for finding the petitioner was not credible here. And that's at page 53 of the certified administrative record. And in the same on the same page, the immigration judge notes that the petitioner's wife also testified. She stated that she was aware of the death of his brother and so on and so forth. In 7 and 8, the IJ seems to say what concerns him about credibility. The vagueness, no clear explanation, also testified court finds explanations aren't right. Court does not find him credible. So, I mean, it's at least questionable as to whether he really gave consideration to these and saying, you know, he's not going to be persecuted. I beg your pardon. I think it's clear that the immigration judge did consider the evidence here, the non-discredited evidence, and simply concluded that it wasn't enough to shore up his claim. It was considered as part of the adverse. Okay, assume that's true. Now let's get back to the legal question, which is, Would you agree or disagree that withholding of removal is a purely objective inquiry, as opposed to asylum, which has a subjective and an objective component? I would agree that withholding of removal is an objective inquiry. And I would say that here the issue was not the petitioner's subjective fear of harm, but the objective issue of whether he established membership in his claimed social group. And he did not, because he didn't provide credible testimony. Yeah, well, when you say he did not because he didn't provide credible testimony, you are yourself ignoring the other evidence. But leave that aside for a minute. I'm just trying to focus on the BIA's job now, the BIA's job. The BIA appears to have taken the position that you can't win on any of your claims, including the withholding claim, because you're not credible. You've said earlier you think that credible testimony is a requirement to succeed on a withholding claim. What's your legal authority for that? The statute itself makes credibility a requirement. No, you quoted from it, and all that says is that you may carry your burden if you are credible. But it does not say that if you're not credible, you can't carry your burden. The inverse is not true. It doesn't say that. It says you may be able to carry your burden of proving objectively that you've got a case for withholding, if you've got credible testimony. But I'm looking for where you can point us to the assertion that without credible testimony, you cannot carry your burden. It says that the testimony may be sufficient, but only if the testimony is credible. It doesn't say that the testimony is the only thing that you would look at. Obviously, the testimony can be sufficient only if it's credible. But if it's not credible, that doesn't mean that other evidence should be disregarded. I mean, I think that it's made clear that it's part of the burden of proof. In the statute itself, it's listed under the burden of proof. It's required to have credible testimony in order to meet your burden of proof. In order for it to be sufficient in and of itself. But that doesn't mean that that's the only thing that is considered. Assume, take a hypothetical. Let's assume that you had somebody get on the stand, they lied their head off, the IJ said, I just don't believe you, but I have affidavits from four members of a terrorist group here who say they'll beat and kill you if you come back to the country. Now, in a circumstance like that, where you had fully credible, and you know what? One of those terrorists flew in here and is prepared to take the stand. Would you say, I'm sorry, that's just, we think you're a liar. You testified badly, and therefore, you haven't carried your burden of proof. Or would you say, well, there's a lot of other evidence here, highly persuasive, that you will be persecuted if you go back? I mean, I think that goes to the, first of all, that isn't the situation we have here. I know, I know it isn't, but I'm trying to get you to address the legal point, and I'm having trouble with your articulation of it, because you do seem to be reading a sufficient in and of itself assertion in the statute to mean that it is essential, and those are two different things. So I pose to you this hypothetical to try to dry out and get you to deal with the fact that it's possible to have bad testimony from the petitioner and overwhelming evidence of persecution that's not the petitioner's testimony, isn't it? I think the overall burden of the petitioner is to provide a credible account of his claim. And I think that could potentially, I guess one could potentially conjure up a scenario where the objective evidence in the case, apart from the non-credible testimony, might be enough, but this certainly isn't the case here. And the petitioner here advanced his new claim for asylum on the day of the merits hearing and did so in a way that was completely inconsistent. And I think that it sort of goes to the factual nature of this inquiry that, you know, you talk about the hypothetical of what if there were four witnesses who were reliable or in the suggestion of the petitioner that, you know, 20 witnesses had testified regarding the petitioner's particular social group and his membership, and would that not be enough? I think that really goes to the factual nature of the inquiry and whether or not he has met his burden. True enough that that would be a factual discussion in a factual way. But what we're grappling with right now is whether the BIA did its job, not the underlying IJ point, not what the IJ did or didn't do, but did the BIA misapprehend and misunderstand its own role and what the law was when it framed the issue as strictly one of credibility of the petitioner? Because that's how it framed it, isn't it? It said you can't win because of adverse credibility, which sounds like the BIA saying without credible testimony from you, you can't win on a withholding claim. If that's the BIA's position, is it not a legal position? Not a factual one, but a legal position. I think that's an accurate – I think that you're correct, Your Honor, to identify that as a legal issue as to whether or not the board erred in how it assessed whether the adverse credibility finding was enough. That is a legal issue, yes. Okay, and if that's a legal issue and they got it wrong, what's the right thing for us to do? Should we send it back to them? Or is there some way you can make out an argument that it's all harmless and it doesn't matter? I think if the court found a legal error, typically the case does go back to the board to remedy whatever legal error there is. I do think there's a level of a futility argument to be made here, where even if the case were returned, the immigration judge's decision certainly addressed the evidence, the objective evidence in the record. And I do think here, too, that the board adopted and affirmed the immigration judge's finding to the extent that they maybe overstepped their bounds by saying that the adverse credibility finding regarding the non-credible testimony sufficed, even if the court were to find some error in the way that they framed that. The ultimate conclusion that the board reached in citing the pages of the immigration judge's decision, ultimately the petitioner here didn't meet his burden of proof. He didn't meet his burden of proving his membership in this particular social group. But we really don't know how the IJ viewed the wife's testimony and the affidavit of probable cause. It seems to me on remand that BIA, if we alert them, might say, you know, IJ, you're saying he's not credible, inconsistencies, he was vague, you think he's making it up. But, you know, is the wife also incredible, or do you believe that he told her that he had had relations with men and this affidavit of probable cause points to the fact that if he goes back, he's probably going to be persecuted. It just seems like that might be a possible end game to this situation. I mean, it's possible that the IJ may say, no, she didn't testify, I believe he told her this morning what to say, and this affidavit, eh, so much, but, you know, I stick to my guns, that's fine. But we don't really know that the IJ really looked at that and judged her credibility and what this affidavit said. I think that the challenge there is that what we're really talking about then is not whether the immigration judge considered that evidence, but whether the immigration judge considered it enough. And I would argue that that is also a factual inquiry. Right, but the BIA maybe should be concerned about that. And the BIA showed no concern for that at all. In its opinion, it just doesn't say anything other than his adverse credibility, his adverse credibility, his adverse credibility. Okay. I think that the board adopted and affirmed and therefore subsumed within that the immigration judge's findings here. Okay. We got you. Thanks very much, Ms. Carter. We've got your argument here and in the briefing, and we will turn the podium back over to Mr. Brophy for his rebuttal. Thank you, Your Honors. If I may, I would like to briefly address the difference between K.S.'s asylum claim and K.S.'s withholding of removal claim when it comes to the BIA's decision. I discussed in, I believe, one of our letter briefs to the court after the supplemental briefing was ordered, that the idea of asylum having a subjective component and withholding having a purely objective component was well noted. It's an important distinction. However, the same way that we don't believe that this court should say, well, the BIA probably would have affirmed the IJ's factual finding or the IJ's mixed question of law and fact when it comes to bisexuality, we also believe that if an IJ had looked and determined whether K.S. had a subjective fear of returning to Jamaica, that they probably would have found that based on adverse credibility, he doesn't have a subjective fear. The reality is, is that the IJ's decision was based both on adverse credibility and on non-membership of a particular social group. There was never any point in the IJ's decision or any point in the BIA's decision that said that K.S. does not have a subjective fear of returning to Jamaica or that K.S. doesn't have a reasonable fear either. Isn't it implicit in what the IJ said? When the IJ said, I don't believe you, I don't believe you're in this group, since the testimony was all about how he was bisexual, he was a cross-dresser, he was in the group, by the IJ saying, I don't believe you, isn't the IJ necessarily saying, you are not, as a matter of fact, a bisexual, you are not a person who has got a basis for fear, and I've taken all the evidence into account. In other words, I'm not sure how you can say there isn't a finding by the IJ that there's not a subjective component. It seems pretty clear that the IJ said, yeah, you don't have a subjective fear, you're a liar, and your other evidence doesn't change my mind about that. And I objectively find that you're not in that social group. I mean, doesn't the subjective objective come in more with fear of persecution, well-founded fear subjectively versus objective, are you going to be persecuted in the future, whether or not you have a well-founded fear? I mean, I don't think the subjective objective here works that, you know, does its job, if you will, in a social group determination. Because a social group determination appears to be, I mean, it has to be objective. I looked at all the evidence, and, you know, and you may believe you're a homosexual, but that's not going to do it. I find you're not in that social group. I find you're not. You're making it up. So isn't that an objective determination in any event? We would agree, Your Honor, that, yes, the determination as to whether or not KS was in a particular social group would be entirely objective. However, I can also briefly respond to your question, Judge Jordan. I see my time is up. The subjective component, we would respectfully disagree that that would be embedded within the IJ's decision here that KS is not bisexual. Certainly the IJ never explicitly made that finding, and I do believe that I would agree with Judge Rendell that the – Well, don't agree. I'm not – I'm not – I'll agree with your – with the question that you posed, that the bisexuality component, is KS bisexual, would be a purely objective question. Thank you. Thank you, Your Honors. All right. Thanks, Mr. Brophy.